UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

NICHOLAS AGOLLI,

                     Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

---------------------------------------------------------------

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
20-CV-5369 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Nicholas Agolli commenced the above-captioned action on November 5, 2020, against the Commissioner of Social Security (the "Commissioner"). (Compl., Docket Entry No. 1.) Plaintiff seeks review of a final decision of the Commissioner denying his claim for supplemental security income under the Social Security Act (the "SSA"), pursuant to 42 U.S.C. § 405(g). (*Id.* at 1, 3.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, claiming that the findings of Administrative Law Judge Dina R. Loewy (the "ALJ") were not supported by substantial evidence. Plaintiff contends that the ALJ: (1) erroneously determined that Plaintiff did not meet or equal Listing 12.10; (2) failed to properly evaluate the medical and psychiatric evidence; and (3) failed to adequately develop the record. (Pl.'s Mot. for J. on Pleadings ("Pl.'s Mot."), Docket Entry No. 13; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 13.) The Commissioner cross-moves for judgment on the pleadings, arguing that the ALJ's decision is supported by substantial evidence. (Comm'r's Cross-Mot. for J. on Pleadings ("Comm'r's Mot."), Docket Entry No. 18; Comm'r's Mem. of Law in Supp. of Comm'r's Mot. ("Comm'r's Mem."), Docket Entry No. 18-1.)

For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings.

## I. Background

Plaintiff was born in 1999. (Certified Admin. R. ("R.") 55, Docket Entry No. 11.) At eighteen months old he was diagnosed with autism spectrum disorder. (R. 343, 345.) Plaintiff is a student at the College of Staten Island, (R. 273), and has no work history, (R. 180). Plaintiff applied for disability benefits on October 20, 2017, alleging disability as of February 26, 1999, due to autism spectrum disorder and kyphoscoliosis. (R. 55.) The Social Security Administration denied his claim on February 13, 2018, (R. 68–72), and Plaintiff requested a hearing with an ALJ on February 23, 2018, (R. 80). The ALJ held a hearing on April 30, 2019. (R. 24–53.) By decision dated July 3, 2019, the ALJ determined that Plaintiff was not disabled. (R. 7–23.) On September 1, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's determination, rendering the ALJ's decision final. (R. 1–6.) Plaintiff filed a timely appeal to the Court. (*See* Compl.)

### a. Hearing before the ALJ

On April 30, 2019, Plaintiff appeared at the hearing accompanied by counsel. (R. 27.) The ALJ heard testimony from Plaintiff, Plaintiff's mother, and vocational expert Peter Manzi (the "VE"), who appeared by telephone. (R. 25–53.)

#### i. Plaintiff's testimony

Plaintiff was twenty years old and a sophomore in college, studying drama and music and working towards his Associate degree. (R. 28.) Plaintiff was taking eighteen credit hours, had a 3.2 grade point average, and had a full schedule of classes from Monday to Thursday. (R. 28–32.) He was studying acting and had put on plays outside of school. (R. 29.) He lived about

twenty minutes from school and his parents or aunt would drive him there.  (R. 29.)  During his first year of college, Plaintiff had an anxiety attack during a test, and another anxiety attack after failing an assignment.  (R. 35–37.)  Due to those incidents, he receives extra time for tests and uses a reader to assist with reading and clarifying test questions.  (R. 34, 40–41.)  Plaintiff also obtained counseling once per week with the college's Office of Accessibility.  (R. 34–35, 37, 40–41.)

Plaintiff does not take public transportation due to his anxiety, does not have any friends in school or outside of school, and does not leave his home without his parents or aunt except to attend school.  (R. 37.)  He participates in Community Habitation ("Com Hab") where someone takes him and family members out to help develop his daily living skills such as cooking and shopping.  (R. 37–38, 42.)  Plaintiff does not prepare any food because he is afraid of the oven.  (R. 38, 46.)  His parents select his clothing and must remind him to take care of his personal hygiene.  (R. 42.)

Plaintiff receives physical therapy for his back, which helps his back pain for a few days before the pain returns.  (R. 32–33.)  He does not take any medication for his pain for fear of becoming addicted.  (R. 32.)  Plaintiff can walk for about five to ten minutes before his back hurts and can sit and stand for about ten minutes before his back hurts.  (R. 32–33).  When his back hurts at school from sitting in class all day, Plaintiff stands up and walks around or out of the room.  (R. 33.)  He can lift about five to ten pounds.  (R. 33.)

      ii.   **Plaintiff's mother's testimony**

Plaintiff's mother testified that together with other family members, they take Plaintiff wherever he needs to go despite encouragement to go places by himself.  (R. 39–40.)  Plaintiff does not have any friends and stays at home or goes to family members' homes.  (R. 40.)  She

cooks for him, selects his clothes, and must remind him to shave and shower. (R. 42.) Plaintiff has participated in Com Hab for a year and half, but does not otherwise socialize, as he does not feel comfortable around others. (R. 42–43.) Plaintiff had a bad anxiety attack at school and a counselor from the Office of Accessibility was concerned that he would not be able to continue with school. (R. 43–44.) Plaintiff's mother noted that he has had similar anxiety attacks at home. (R. 44.) Plaintiff complains about his back pain every day, walks around often, and has been going to physical therapy but is afraid to take pain medication. (R. 44–45.) Plaintiff has had difficulty thinking outside the box and when things do not go his way, he melts down and always requires assistance. (R. 45–46.) He received counseling in high school as part of his individualized education plan and worked with a paraprofessional. (R. 47–48.)

### iii. VE's testimony

The ALJ informed the VE that Plaintiff was twenty years old, had no work history, and was currently taking college courses. (R. 49.) The VE testified that a hypothetical individual with Plaintiff's vocational factors; limited to sedentary work, occasional pushing and pulling, climbing ramps and stairs but never climbing ladders, ropes or scaffolds, and occasional balancing or stooping but never kneeling, crouching or crawling; avoiding all exposure to hazardous machinery, unprotected heights, operational control of moving machinery, and interaction with the public with only occasional interaction with coworkers could work as an addresser, lens inserter, and ampoule sealer. (R. 49–50.) All three jobs would require no stooping, but the addresser would require more than minimal speaking with others. (R. 50.) The VE proposed general assembler as another job that required minimal speaking with others in lieu of addresser. (R. 50–51.) Plaintiff's counsel questioned whether a hypothetical individual who needed to constantly fluctuate between sitting and standing every fifteen minutes would be able

4

to perform any of the proposed positions.  (R. 51.)  The VE testified that the positions were for sedentary work and with such limitations, such a person could not perform the jobs identified and could not work.  (R. 52.)  Counsel also asked if those positions would be available if the hypothetical individual was limited to no interaction with co-workers and the VE testified that there would not be any sustainable work with such a limitation.  (R. 52.)

### b.   The ALJ's decision

The ALJ conducted the five-step sequential analysis required by the SSA[1] and concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since October 20, 2017, the date the application was filed."  (R. 19.)  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 20, 2017.  (R. 12.)  At step two, the ALJ found that Plaintiff had severe impairments — autism spectrum disorder and Scheuermann's kyphoscoliosis.  (R. 12.)  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings").  (R. 12–14.)  The ALJ considered the degenerative disc disease Listing 1.04 and found that the record did not demonstrate compromise

---

[1] The five-step sequential process outlined by the SSA considers:
> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Demars v. Comm'r of Soc. Sec.*, 841 F. App'x 258, 260–61 (2d Cir. 2021) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)).

5

of a nerve root (including the cauda equina) or the spinal cord. (R. 12.) Further, the ALJ determined there was no evidence of (a) neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss with a positive straight leg raising test, (b) spinal arachnoiditis, or (c) lumbar spinal stenosis resulting in pseudoclaudication. (R. 12–13; 20 C.F.R. § 404, Subpart P, App. 1, Listing 1.04.) The ALJ also considered Listing 12.10 for autism spectrum disorder and determined Plaintiff did not meet or equal the listing as he had only moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; and (3) concentration, persistence, or maintaining pace, and a marked limitation in adapting or managing oneself. (R. 13–14; 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E).)

    At step four, the ALJ found Plaintiff had a residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except Plaintiff can occasionally push/pull; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, but never stoop, kneel, crouch, or crawl. (R. 14.) The ALJ also reviewed the medical evidence. The consultative examiner, Dr. Sujit Chakrabarti, opined that Plaintiff had severe kyphoscoliosis of the thoracic spine which caused a deviation on the left side of the spine; this, in turn, caused Plaintiff constant pain possibly due to spinal stenosis. (R. 17, 311–13.) The ALJ found this opinion was not consistent with the clinical findings of the rehabilitation specialist, Dr. Allen Chen, who noted a mild scoliotic curvature and Scheuermann's kyphosis, but determined that surgical intervention was not needed and that physical therapy and pain medication would alleviate pain symptoms. (R. 17, 476–78.)

    The ALJ found that the RFC was supported by the evidence in the record and reflected a lack of aggressive treatment for physical pain and clinical findings showing mild scoliosis. (R.

6

18.)  At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform a significant number of jobs in the national economy, including lens inserter, addresser / mail clerk, and general assembler. (R. 18–19.)

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same).  Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)).  In deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).  If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision. *See Ewen v. Saul*, No. 19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at

7

112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "In making such determinations, courts should be mindful that '[t]he Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion.'" *McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) (alteration in original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

> b. **The ALJ failed to properly review the medical evidence and her conclusions are not supported by substantial evidence**

Plaintiff argues that the ALJ failed to properly review the medical evidence of Plaintiff's kyphoscoliosis in determining Plaintiff's RFC. (Pl.'s Mem. 8.)

The Commissioner argues that the ALJ properly evaluated Plaintiff's disabling physical impairments and the opinion evidence and the RFC is supported by substantial evidence. (Comm'r's Mem. 15–17.)

The ALJ failed to properly review the medical evidence of Plaintiff's kyphoscoliosis in determining Plaintiff's RFC as she mischaracterized the evidence, failed to properly consider the consistency and supportability of the medical opinions, and substituted her own opinion for that of medical experts.[2]

The ALJ must evaluate the persuasiveness of each medical source according to several factors such as: supportability, consistency, relationship with claimant, specialization, and other

---

[2] On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416). The "new regulations apply only to claims filed on or after March 27, 2017." *Smith v. Comm'r*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). Plaintiff filed his claim on October 20, 2017, which is therefore subject to the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c.

8

factors. 20 C.F.R. §§ 404.920c(c); *Colgan v. Kijakazi*, 22 F.4th 353, 359 n.2 (2d Cir. 2022) ("Pursuant to the new regulation, the ALJ will consider a series of factors, including, *inter alia*, supportability, consistency, relationship to the claimant, and specialization when evaluating a medical opinion."); *Acarkan v. Saul*, No. 20-CV-02580, 2021 WL 4356018, at *1 (E.D.N.Y Sept. 24, 2021) ("[T]he persuasiveness of each medical source is evaluated according to several factors: supportability, consistency, relationship with claimant, specialization, and other factors." (citing 20 C.F.R. § 404.1520c(c))). Supportability and consistency are the most significant factors to consider and the ALJ is not required to consider the other factors in its analysis. 20 C.F.R. § 404.1520c9(b)(2); *Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) ("The regulations explain that when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings, the most important factors . . . are supportability . . . and consistency." (internal quotation marks omitted)). The ALJ must explain how she considered the supportability and consistency factors when determining the persuasiveness of a medical source's opinion. *Krystle H. v. Comm'r of Soc. Sec.*, No. 20-CV-855, 2022 WL 888225, at *3 (N.D.N.Y. Mar. 25, 2022). "If the ALJ fails adequately to explain the supportability or consistency factors or bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (internal quotation marks omitted), *report and recommendation adopted*, No. 19-CV-4630, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *11 (E.D.N.Y. Sept. 30, 2020) (remanding the case because the ALJ failed to properly evaluate the supportability and consistency of the medical opinions provided).

### i. The ALJ mischaracterized the record in determining Plaintiff's RFC

The ALJ based Plaintiff's RFC on mischaracterizations of the record. The ALJ summarized the clinical findings of a lumbar spine x-ray from January 18, 2018, which indicated minimal scoliosis, severe kyphosis, but no fractures or malalignment, with vertebra body heights maintained, posterior elements intact, disc spaces preserved, and no spondylolisthesis. (R. 16, 314.) The ALJ noted the treatment records from Dr. Han Jo Kim, where Plaintiff was diagnosed with Scheuermann's kyphosis and prescribed a back brace for two years with improved posture and prescribed physical therapy to wean him off the brace. (R. 16, 325–330, 357.) The ALJ reviewed Plaintiff's physical therapy progress reports which she states demonstrate slight back pain after dancing at a wedding and the ability to walk five blocks. (R. 16, 406–08, 417.) She also noted that Plaintiff's mother reported Plaintiff could walk one mile. Further, the ALJ noted that Plaintiff's physical examinations showed lumbar spine flexion and extension at eighty degrees, cervical range of motion within normal limits, no motor or sensory loss, or muscle atrophy. (R. 16, 312, 477.) Plaintiff could squat and walk heel to toe, and he had full strength in both lower extremities, no paraspinal or SI joint tenderness, a negative straight leg test and lumbar facet loading test, and no gait instability. (R. 312, 477.)

The ALJ, in her review of the clinical findings, did not remark on Plaintiff's follow-up examination with Dr. Kim on June 4, 2018, in which Dr. Kim reported Plaintiff's kyphosis had progressed to eighty degrees and the x-ray which showed multilevel anterior vertebral body wedge compression deformities in the mid thoracic spine. (R. 332–34, 394.) The ALJ stated that Plaintiff had a follow-up consultation with Dr. Kim on January 14, 2019, where his spinal examination was normal, and he reported only mild back pain that was made worse by sitting or standing for long periods of time. (R. 17.) The ALJ first mischaracterized the treatment

10

relationship as it was not a consultation but a scheduled follow-up with a scoliosis and cervical spine specialist who had treated Plaintiff for five years.  Second, the ALJ misread Dr. Kim's comments which state that Plaintiff complained of *mid* back pain, not mild back pain.  (R. 542.)  An x-ray taken on January 14, 2019, showed that "thoracic kyphoscoliosis with associated multiple anterior wedge deformities of the thoracic vertebral bodies appear[ed] slightly progressed."  (R. 544.)

   The ALJ also mischaracterized Plaintiff's physical therapy progress reports.  The ALJ noted that Plaintiff complained of slight back pain after dancing at a wedding.  (R. 16.)  While Plaintiff did make this complaint, he also frequently complained of back pain due to long periods of sitting, standing or physical exertion.  He indicated to the physical therapist, Leandra Danza that while he felt relief after physical therapy, the pain would return and would also increase when he sat for a long class, had to walk for a longer period or had to carry something heavy.  (R. 364, 366, 378, 382, 386, 396, 400, 402, 410, 439, 443, 450, 464, 470, 474, 492, 498, 507.)  Plaintiff also noted his pain increased when he felt an increase in stress from school.  (R. 498–99, 532.)  Plaintiff specifically told Ms. Danza that since returning to school his pain increased and Ms. Danza provided plaintiff with a note for school so that he would be permitted to get up and walk around.  (R. 439.)  There were periods in which Plaintiff's back pain improved but on many of those occasions he was not in school, or it was after Ms. Danza provided Plaintiff with the note for school in which he was permitted to stand and walk around during class time.  (R. 423–35, 456–60, 496, 505.)  Plaintiff noted that he had improvements but there were good days and bad days.  (R. 522.)  The ALJ significantly diminished the severity and frequency of Plaintiff's back pain and its causes based on prolonged periods of sitting, standing, walking, and other exertional activities.

> ii. **The ALJ failed to properly address the consistency and supportability factors**

In addition, the ALJ did not properly address the consistency and supportability factors when determining the persuasiveness of the medical evidence and opinions. 20 C.F.R. § 404.920c; S*oto*, 2020 WL 5820566, at *3 (noting that the ALJ *must* explain how he considered the supportability and consistency factors for a medical source's medical opinions). The ALJ opined that the notations from the consultative examiner Dr. Chakrabarti, who stated Plaintiff required assistance getting on the examining table, and the physical therapist, who found Plaintiff had difficulty sitting up, were inconsistent with Dr. Allen Chen's findings from January of 2018. (R. 17.) Dr. Chen's examination showed that Plaintiff had a normal gait, full strength in his lower extremities, his sensation and reflexes were intact, and he had no paraspinal or SI joint tenderness and negative straight leg and lumbar facet loading tests and full lumbar spine range of motion. (R. 477.) However, these findings are not inconsistent because Dr. Chen also noted Plaintiff's complaints of pain in his mid-thoracic region made worse by walking, sitting, standing, lying down, and exercising, and the magnetic resonance image of Plaintiff's thoracic spine reviewed by Dr. Chen also showed scoliotic curvature which he determined to be mild and anterior wedging of the T7-T8 and T9 vertebrae which is consistent with Scheuermann's kyphosis. Dr. Chen did not dismiss Plaintiff's pain but prescribed physical therapy and medication, noting that surgery was not recommended at that time. (R. 476–78.)

Dr. Chakrabarti also noted that Plaintiff did not suffer from motor or sensory loss or muscle atrophy, and that he had normal joint movements, full range of motion in his cervical spine and flexion and extensions of about eighty degrees in his lumbar spine. (R. 312.) He also remarked that Plaintiff suffered from kyphoscoliosis in the thoracic spine which caused a

12

deviation to the left and that he was in pain.[3]  (R. 312.)  The physical therapist, Ms. Danza, stated that Plaintiff "present[ed] with rounded shoulder[s], increased thoracic kyphosis . . . and severe [forward head position]."  (R. 357.)  Ms. Danza also noted that Plaintiff had a full range of motion in his cervical spine with an end range pain of seven out of ten and measured the curve in Plaintiff's spine with a sociometer for a curve of eight degrees which is consistent with findings of a mild curve of the spine.  (R. 357–58.)  Thus, the findings of Dr. Chakrabarti and Ms. Danza were consistent with Dr. Chen's findings and all three were supported by examinations and imaging results.

The ALJ also opined that she found the Disability Determination residual functional capacity assessments from Dr. Feldman and Dr. Fassler to be persuasive because they are "familiar with Agency regulations and their opinions are consistent with the record."  (R. 18.)  Dr. Feldman assessed Plaintiff's physical abilities, determining that Plaintiff could perform sedentary work, occasionally lift or carry ten pounds frequently lift or carry less than ten pounds, stand or walk for two hours and sit with normal breaks for six hours in an eight-hour workday.  Dr. Feldman further determined that Plaintiff was limited in both upper extremities for pushing and pulling, could only occasionally climb ramps and stairs, balance, kneel and crouch but could never climb ladders/ropers/scaffolds, stoop or crawl, and must also avoid concentrated exposure to noise and hazards.  (R. 62–63.)  "The report of a state agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."  *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012); *Soto v. Comm'r of*

---

[3] Dr. Chakrabarti indicated that Plaintiff was informed he had spinal stenosis and Dr. Chakrabarti thought the pain might be caused by this diagnosis.  There is no diagnosis of spinal stenosis in Plaintiff's records, nor does Plaintiff allege such a diagnosis as a disability.  Dr. Chakrabarti made his findings based upon the information he was given and did not provide such a diagnosis.  (R. 311–12.)

13

*Soc. Sec.,* No. 19-CV-2184, 2020 WL 6940993, at *5 (E.D.N.Y. Nov. 25, 2020) ("The ALJ correctly noted that state agency medical consultants are deemed, by regulation, to be 'highly qualified and experts in Social Security disability evaluation,' and their opinions constitute medical evidence." (citing 20 C.F.R. § 404.1513a(b)(i))). Portions of Dr. Feldman's opinion were consistent with Plaintiff's diagnosis of severe kyphoscoliosis, specifically the limitations in his upper extremities, and prohibition on stooping and crawling. However, Dr. Feldman's opinion was not consistent with Plaintiff's complaints of pain from prolonged periods of sitting, standing, and walking. As discussed above, the ALJ dismissed the evidence which supports that Plaintiff experiences more pain during prolonged periods of sitting, standing, walking, and other exertional activities. Dr. Feldman opined that Plaintiff could stand or walk for two hours and sit with normal breaks for six hours in an eight-hour workday. (R. 62.) This portion of the opinion is not consistent with or supported by the record where Dr. Kim, Dr. Chen, and Dr. Chakrabarti all noted that Plaintiff's pain is worsened by walking, sitting, and standing. (R. 311–312, 476, 542.) The physical therapy records also show that when Plaintiff was required to sit for long periods, walk certain distances, carry heavy books, or even increase his exertion level by other activities such as dancing, he had an increase in his pain level. (R. 364, 366, 378, 382, 386, 396, 400, 402, 410, 439, 443, 450, 464, 470, 474, 492, 498, 507.) Thus, Dr. Feldman's opinion that Plaintiff can stand or walk for two hours and sit for six hours is not consistent with or supported by the record.

### iii. The ALJ inappropriately relied on lack of aggressive treatment to determine the RFC

Lastly, the ALJ opined that the RFC was supported by the record because doctors opted for a less aggressive treatment for Plaintiff's pain, and because he takes no medication for the pain and suffers from only mild scoliosis. (R. 18.) In doing so, the ALJ substituted her own lay

14

opinion for that of a medical expert. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute [her] own expertise or view of the medical proof for . . . any competent medical opinion.").

The ALJ claims that Plaintiff's doctors did not pursue an aggressive treatment for Plaintiff's pain because neither Dr. Kim nor Dr. Chen proposed a surgical response for the severe kyphosis, (R. 328–30, 478), inferring that the condition and accompanying pain are not as significant as Plaintiff makes them out to be, (R. 16 ("[C]laimant's records indicate that he is not as limited as alleged.")). Plaintiff has a curve of approximately eighty degrees which is generally not treated with surgery.[4] Further, the ALJ failed to take into consideration that Plaintiff's kyphosis was becoming worse. (R. 544.) The ALJ also stated that the RFC was supported by the fact that Plaintiff did not take pain medication, but the ALJ mischaracterized the record and substituted her own judgment; both Plaintiff and his mother testified that Plaintiff does not take pain medication because he fears becoming addicted to it — not because he does not require it for his pain. (R. 32, 45.) An RFC determination is a medical determination, and when an ALJ makes such a determination by improperly substituting her own opinion instead of using a supporting expert medical opinion, she has committed legal error. *See Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010).

---

[4] *See* Thomas G. Lowe, *Scheuermann's kyphosis*, Neurosurgery Clinics of N. Am. 18(2):305-15 (Apr. 18, 2007), https://pubmed.ncbi.nlm.nih.gov/17556132/ ("Brace treatment is almost always successful in patients with kyphosis between 55 degrees and 80 degrees if the diagnosis is made before skeletal maturity."); Hans-Ruduolf Weiss et al., *Brace treatment for patients with Scheuermann's disease — a review of the literature and first experiences with a new brace design*, Scoliosis 4, 22 (2009), https://doi.org/10.1186/1748-7161-4-22 ("Conservative treatment of Scheuermann's hyperkyphosis in international literature is generally regarded as an effective approach. Physiotherapy and bracing are the firstline treatments for this condition.").

The ALJ failed to properly review the medical evidence for Plaintiff's severe kyphosis. The ALJ mischaracterized the medical evidence, failed to properly consider the consistency and supportability of the medical opinions, and substituted her own lay opinion for that of medical experts. The Court therefore remands this case.[5]

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion for judgment on the pleadings. The Commissioner's decision is vacated, and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Clerk of Court is directed to close this case.

Dated: September 15, 2023
       Brooklyn, New York

SO ORDERED:

       s/ MKB
MARGO K. BRODIE
United States District Judge

---

[5] Because the Court remands this case due to the ALJ's failure to properly consider the evidence of Plaintiff's physical impairments, the Court declines to address Plaintiff's remaining arguments. *See e.g., Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542, 2015 WL 5657389, at *19 (E.D.N.Y. Sept. 23, 2015). The Court nevertheless urges the ALJ to consider Plaintiff's contention that the ALJ should have adopted more limitations in the RFC finding specifically related to Plaintiff's pain and physical impairments to ensure that the determination is supported by substantial evidence.